IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 118,648

STATE OF KANSAS,
*Appellee*,

v.

CHRISTOPHER LEE HERRING,
*Appellant.*

SYLLABUS BY THE COURT

1.

It is an abuse of discretion for a district court to apply the wrong legal standard when considering a plea withdrawal for good cause under K.S.A. 2019 Supp. 22-3210(d)(1).

2.

When an appellate court determines a district court abused its discretion by applying the wrong legal standard to its consideration of a plea withdrawal for good cause under K.S.A. 2019 Supp. 22-3210(d)(1), the correct disposition is to reverse the decision and remand the case to the district court with directions to ensure the correct legal standard is applied.

Review of the judgment of the Court of Appeals in an unpublished opinion filed March 29, 2019. Appeal from Sedgwick District Court; JEFFREY SYRIOS, judge. Opinion filed October 16, 2020. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed, and the case is remanded with directions.

1

*Kai Tate Mann*, of Kansas Appellate Defender Office, was on the brief for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

BILES, J.: When a district court applies the wrong legal standard to its consideration of a plea withdrawal for good cause under K.S.A. 2019 Supp. 22-3210(d)(1), it is an abuse of discretion. *State v. Aguilar*, 290 Kan. 506, Syl. ¶ 2, 231 P.3d 563 (2010). In this case, Christopher Herring challenges a Court of Appeals decision that used a harmless error analysis to save a district court's denial of his motion to withdraw his plea—even though the panel agreed the wrong legal standard was applied. *State v. Herring*, No. 118,648, 2019 WL 1413030, at *3-4 (Kan. App. 2019) (unpublished opinion). Herring argues an appellate court cannot engage in harmless error analysis in this circumstance. We agree. For that reason, we reverse the panel's decision and remand his case to the district court with directions to use the proper legal standard, i.e., K.S.A. 2019 Supp. 22-3210(d)(1) ("A plea of guilty or nolo contendere, for *good cause* shown and within the discretion of the court, may be withdrawn at any time before sentence is adjudged. [Emphasis added.]").

FACTUAL AND PROCEDURAL BACKGROUND

In November 2016, the State charged Herring with aggravated robbery at a Family Dollar store. The district court appointed Brandon Hottman to represent him. Before trial, Herring filed three pro se motions to discharge Hottman. The court denied each motion after hearings on the merits. His arguments advanced in those motions underlie this appeal.

At the first hearing, Herring claimed Hottman had not allowed him to review audio and video recordings from surveillance cameras at the store. Hottman admitted this but explained he had reviewed the recordings and discussed them with Herring. The court instructed Hottman to make them available to Herring. The court then denied the motion, reasoning his claim was legally insufficient and premature.

At the second hearing, Herring argued Hottman refused to file a motion to dismiss "for lack of evidence" and had requested a continuance over Herring's objection. Hottman said he asked for the delay because he had not yet received the preliminary hearing transcript and there was "an open investigation" concerning Herring's possible alibi defense. The district court denied the motion.

At the third hearing, Herring repeated earlier arguments, saying he had "bad communication" with Hottman over his refusal to file the motion to dismiss. Hottman conceded they had disagreed on that because Hottman believed the motion was premature. The court again refused to appoint new counsel.

Herring's case went to trial in May 2017, but he pleaded no contest to amended charges of robbery and aggravated assault just after jury selection. At the plea hearing, he attributed his reason for taking the plea to additional evidence the State had concerning a phone call Herring made from jail. The court accepted Herring's plea and found him guilty of the amended charges.

Herring filed a pro se motion before sentencing to withdraw his plea. Among other reasons, he asserted ineffective counsel. The court appointed him a new attorney, who expanded on the pro se claims. Both Herring and Hottman testified at an evidentiary hearing. Herring made three claims about Hottman's competence:  (1) insufficient

3

visitations, (2) failure to investigate an alibi defense, and (3) mischaracterization of the potential adverse impact from the jail phone call.

As to the first claim, Herring said Hottman only visited him "[m]aybe twice." Hottman denied this, insisting they met at least seven times, with each visit lasting 10 to 30 minutes. As for the second claim, Herring said he gave Hottman information about possible alibi witnesses, including his sister. He did not know the others' names but provided their possible addresses. Herring claimed as his alibi that he was eating chicken with his sister "at one point in time around that time." Hottman testified he tried to verify this but decided it was not viable because he could not "anchor it in time." He said the sister first told him she and Herring regularly ate chicken and "indicated she had chicken with him on a Tuesday." But he said when she learned what day the crimes occurred, she "changed it to a Thursday." Hottman said he made the "strategic decision" not to pursue this. As to the other witnesses, Hottman said he believed his investigator attempted to contact them but did not explain the result of that effort.

Finally, Herring complained Hottman mischaracterized the jail phone call as a confession and improperly persuaded him "that [was] a reason why [he] should take a deal." Hottman described the call as Herring telling his sister that "he needed money and then she [made] a comment that the Family Dollar won't feed you or something along those lines." Hottman thought it sounded "like [Herring] was explaining his actions." He also said he had received the recording about a week before trial, but neither he nor his co-counsel listened to it until the morning of trial just before voir dire. They discussed it with Herring after completing jury selection. Hottman said Herring's "first comment [about the call] was that [it] sounds like a confession and [Herring] put his head down. He maintained that it was taken out of context but admittedly said that it didn't sound good." The appellate record does not include a transcript or audio recording of that call.

4

In ruling on the plea withdrawal, the district court considered Herring's claims in light of K.S.A. 2019 Supp. 22-3210(d)(1) and the three nonexclusive factors set out in *State v. Edgar*, 281 Kan. 30, Syl. ¶ 2, 127 P.3d 986 (2006). The court stated, "The *Edgar* factors are, one, whether the defendant was represented by competent counsel, [two] whether the defendant was misled, coerced, mistreated or unfairly taken advantage of and, three, whether the plea was fairly and understandingly made."

As to the first *Edgar* issue, which is the one relevant for this appeal, the court stated:

> "[To address the first factor,] I considered the two-prong test in *Strickland v. Washington*, 466 U.S. 668, [104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)]. Those factors are two: First, counsel committed serious errors that undermine the Sixth Amendment's guarantee to effective assistance of counsel and, two, counsel's deficient performance prejudiced the defendant.

> "More specifically, [under] *Moncla v. State*, 285 Kan. 826, [176 P.3d 954 (2008)]. . . , a movant must establish, one, counsel's representation fell below the objective standard of reasonableness considering all circumstances and then, two, but for the counsel's deficient performance there is a reasonable probability that the outcome of the proceeding would have been more favorable to the defendant.

> "In considering the first element, defense counsel enjoys a strong presumption that his or her conduct falls within the wide range of reasonable professional conduct. Further, courts are highly deferential in scrutinizing counsel's conduct and counsel's decisions on matters of reasonable strategy and make every effort to eliminate the distorting effects of hindsight.

> . . . .

5

"The issue in this case is has the defendant . . . shown good cause to permit a withdrawal of his plea. My ruling is as following: I deny Mr. Herring's motion. I find Mr. Hottman, along with Miss McFerren, provided competent and effective representation of Mr. Herring.

"The question of whether to proceed with an alibi defense is a strategic, tactical, technical, and professional decision that rests with Mr. Hottman. Furthermore, Mr. Hottman thoroughly and capably vetted the facts supporting the proposed defense and in real time as well as hindsight made a strategic decision not to pursue the defense.

. . . .

"Based upon the written motion and the defendant's testimony, I believe Mr. Herring's position can fairly be broken down into three claims. First, he was not represented by competent counsel. That's the first *Edgar* factor. I'm including the alibi defense issue under this claim because whether or not to pursue an alibi defense is the attorney's decision. . . . Therefore, the issue should be considered in the context of ineffective representation of counsel. Was it objectively unreasonable for Mr. Hottman not to pursue the alibi defense?

. . . .

" . . . Defendant claims Mr. Hottman's representation was incompetent, incomplete, and insufficient. He claims Mr. Hottman rarely visited him in jail. That is contrary to the credible facts. Mr. Hottman testified from a detailed file that he saw defendant seven times, basically once per month. Mr. Hottman provided competent and reasonable representation.

"Besides seeing defendant in custody, which we all know is not always the best way to spend time investigating and preparing a defense, Mr. Hottman provided defendant with discovery, showed him the video early on, in fact, on February 1st, 2017. He engaged an investigator and when close to trial spent the requisite time preparing pretrial motions, organizing a trial notebook or binder, in his words, and generally

6

preparing for trial. He did all of this while having to endure the defendant's baseless requests to terminate his representation.

"It is clear Mr. Herring wanted his case to be defended a certain way. He wanted to act as a lawyer. He's critical of Mr. Hottman for not filing the defendant's motions. But the law categorized as hybrid representation simply does not allow Mr. Herring to have a lawyer and be a lawyer.

"Now, regarding the alibi defense, first, whether to pursue the defense is Mr. Hottman's decision, not Mr. Herring's decision. So the issue is whether Mr. Hottman's decision not to pursue the defense meets the objective standard of reasonableness. Based upon the facts, it most certainly does.

"Mr. Hottman took his client's alibi evidence at face value and pursued it. He took down the names, principally the defendant's sister, and followed up. He spoke to the sister more than once and had his investigator follow up with the sister, as well as others, but the sister could not provide an adequate recollection or evidence sufficient to anchor the defense. Mr. Hottman recognized this and decided the evidence did not meet the legal requirement to go forward, not to mention that to do so would hurt the credibility of the defendant's other theories of defense, a most reasonable legal decision.

"In summary, based upon the totality of the circumstances, I find that Mr. Herring has failed to meet his burden regarding the first *Strickland* factor and I find that Mr. Hottman's representation clearly meets the objective standard of reasonableness. He did a good job for his client. The defendant's fragmentary perspective of Mr. Hottman's representation, including his argument that Mr. Hottman should have requested a continuance on the second day of trial, is in fact distorted and unduly magnified through the lens of hindsight. I do not consider the second *Strickland* factor."

After denying the motion, the court sentenced Herring to 43 months' imprisonment for robbery and 13 months for aggravated assault, both to run concurrent. Herring

appealed, challenging the district court's ruling on the first *Edgar* factor as an abuse of discretion based on an error of law.

The panel agreed the district court erred by using the wrong legal standard—the *Strickland* test—instead of the correct, less stringent "'lackluster advocacy'" standard specified under *Aguilar*, 290 Kan. at 513, ("Merely lackluster advocacy . . . may be plenty to support the first *Edgar* factor and thus statutory good cause for presentence withdrawal of a plea."). *Herring*, 2019 WL 1413030, at *3-4. But it also held the error was harmless, so it affirmed. The panel's holding states:

> "Regardless, we find this error to be harmless in light of our review of the entire record and the specific findings made by the district court after hearing the evidence presented at the motion hearing. See *Edgar*, 281 Kan. at 37-38 (citing *State v. Trotter*, 218 Kan. 266, 269, 543 P.2d 1023 (1975) ['While we do not approve of any failure to comply strictly with the explicitly stated requirements of K.S.A. 22-3210, it does not follow that every deviation therefrom requires reversal.']). . . . [T]he district court not only found that Herring's attorneys met the objective standard of reasonableness but also expressly found that they were 'competent,' 'effective,' 'capabl[e],' and had done a 'good job' in representing Herring. Each of these findings reveal that the district court concluded that counsel's performance exceeded the 'lackluster advocacy' standard set forth in *Aguilar*.

> "On the one hand, the dictionary defines 'lackluster' to mean 'lacking energy or vitality; boring, unimaginative, etc.' Webster's New World College Dictionary 812 (5th ed. 2014). On the other hand, the dictionary defines 'effective' to mean 'having an effect; producing a result' or 'producing a definite or desired result.' Webster's New World College Dictionary 464 (5th ed. 2014). Accordingly, we find that any error committed by the district court was harmless because the record conclusively shows that the representation of Herring provided by Hottman and his cocounsel was far from lackluster." *Herring*, 2019 WL 1413030, at *4.

8

Herring petitioned this court for review, challenging the panel's application of harmless error. We note the threshold ruling on the district court's use of the wrong legal standard is settled because the State did not cross-petition for review about that. See *State v. McBride*, 307 Kan. 60, 62, 405 P.3d 1196 (2017) (when appellee does not cross-petition for review of a Court of Appeals holding that error occurred, the Supreme Court will not consider whether that holding was erroneous when reviewing the appeal).

Jurisdiction is proper. K.S.A. 20-3018(b) (petition for review of Court of Appeals decision); K.S.A. 60-2101(b) (providing Supreme Court jurisdiction over cases subject to review under K.S.A. 20-3018).

STANDARD OF REVIEW

The issue is whether the district court's improper use of the *Strickland* standard requires remand or is amenable to a harmless error analysis. Our standard of review is de novo. *State v. Ward*, 292 Kan. 541, 577, 256 P.3d 801 (2011); see also *State v. Belone*, 295 Kan. 499, 503, 285 P.3d 378 (2012) (when determining a trial error is harmless, "we employ a de novo review of the entire record").

DISCUSSION

K.S.A. 2019 Supp. 22-3210(d) allows for withdrawal of a guilty or nolo contendere plea in the discretion of the court. See K.S.A. 2019 Supp. 22-3210(d)(1) (presentence; "within the discretion of the court"); *State v. Fritz*, 299 Kan. 153, 154, 321 P.3d 763 (2014) (postsentence; district court's ruling is reviewed for abuse of discretion). But the statutory standards for granting withdrawal differ depending on the timing. If the request is made before sentencing, the plea may be withdrawn for "good cause shown." If

9

requested after sentencing, the plea may be withdrawn only "[t]o correct manifest injustice." K.S.A. 2019 Supp. 22-3210(d)(1), (2).

Under *Aguilar*, when a defendant moves to withdraw a plea *after* sentencing, a district court must use the ineffective assistance standard under *Strickland* to consider the first *Edgar* factor. But when the same motion is made *before* sentencing, the court applies the lower "lackluster advocacy" standard. As the *Aguilar* court explained:

> "It is neither logical nor fair to equate the lesser K.S.A. 22-3210(d) good cause standard governing a presentence plea withdrawal motion to the high constitutional burden. The *Edgar* factors do not transform the lower good cause standard of the statute's plain language into a constitutional gauntlet. *Merely lackluster advocacy . . . may be plenty to support the first* Edgar *factor and thus statutory good cause for presentence withdrawal of a plea*." (Emphasis added.) 290 Kan. at 513.

In deciding the error was harmless, the panel noted the district court "expressly found that [Hottman and his co-counsel] were 'competent,' 'effective,' 'capabl[e],' and had done a 'good job' in representing Herring. Each of these findings reveal that the district court concluded that counsel's performance exceeded the 'lackluster advocacy' standard set forth in *Aguilar*." *Herring*, 2019 WL 1413030, at *4. In so holding, the panel apparently relied on *Edgar*, 281 Kan. at 37-38 (citing *Trotter*, 218 Kan. at 269), to conclude the district court's error could be deemed harmless.

The panel's analysis is wrong. To begin with, neither *Edgar* nor *Trotter* are on point. In *Trotter*, the defendant claimed his guilty pleas were involuntary because the district court did not strictly comply with K.S.A. 2019 Supp. 22-3210(a): when accepting the pleas, the court failed to sufficiently advise Trotter about the nature of the charges, and the possible sentence and consequences of such pleas, nor did it personally question

10

him about the voluntariness of his pleas as the statute required. *Trotter*, 218 Kan. at 268-69. Based on this, the *Trotter* court held,

> "While we do not approve of any failure to comply strictly with the explicitly stated requirements of K.S.A. 22-3210, it does not follow that every deviation therefrom requires reversal. If upon review of the entire record it can be determined that the pleas of guilty were knowingly and voluntarily made, the error resulting from failure to comply strictly with K.S.A. 22-3210 is harmless." 218 Kan. at 269.

Trotter challenged the validity of his guilty pleas for the first time on appeal. 218 Kan. at 266-68 (life sentence case; directly appealed to Supreme Court). And that is why the *Trotter* court looked at the entire record and determined whether the error was harmless. Those circumstances are not presented in Herring's appeal.

In *Edgar*, the court quoted *Trotter*'s holding to explain that while "[a] failure to strictly comply with the [statutory requirements . . . ] may be harmless error if a review of the entire record shows the guilty plea was knowingly and voluntarily made," it "may be good cause for granting a motion to withdraw if the noncompliance results in the defendant not understanding the nature of the charge or the consequences of entering the plea." *Edgar*, 281 Kan. at 37-38.

The simple point is that neither case supports the *Herring* panel's notion that the district court's abuse of discretion from applying the incorrect legal standard to determining "good cause" could be saved by harmless error review. Indeed, our caselaw holds otherwise. In similar cases when "the district court's decision to deny the defendant's motion to withdraw plea may have been guided by an erroneous legal conclusion," the court has consistently reversed and remanded "to ensure that the district court applies the appropriate legal standard to determine whether defendant made the

11

good cause showing." *State v. Garcia*, 295 Kan. 53, Syl. ¶ 5, 283 P.3d 165 (2012); see also *Aguilar*, 290 Kan. at 515 ("The district judge's failure to apply the appropriate standards in the plea withdrawal hearing was an abuse of discretion requiring reversal and remand . . . .").

In *Garcia*, in denying a plea withdrawal, the district court erroneously cited *State v. Ford*, 23 Kan. App. 2d 248, 930 P.2d 1089 (1996) (requiring an allegation of innocence to justify a motion to withdraw a plea prior to sentencing), which was overruled by *State v. Vasquez*, 272 Kan. 692, 696, 36 P.3d 246 (2001) ("It is apparent that this court does not require an allegation that defendant is not guilty as charged as a prerequisite for withdrawing a plea of guilty or nolo contendere prior to sentencing. Nor is there such a requirement in the statute, which bases withdrawal on good cause shown and on the discretion of the trial court."). *Garcia*, 295 Kan. at 58-59. And despite the district court's discussion of the *Edgar* factors, the *Garcia* court was not "reassured enough" to "discount or disregard the possibly inappropriate emphasis on *Ford* and the absence of an allegation of innocence." 295 Kan. at 63. In other words, because the district court's ruling "may have been guided by an erroneous legal conclusion," the "uncertainty" about what it would have done absent the error was enough to reverse its denial and remand for another hearing to apply the appropriate legal framework. 295 Kan. at 63-64.

Herring's case is even more problematic. Here, all agree the district court incorrectly used the more stringent, constitutional standard when considering the first *Edgar* factor. It explicitly stated "defense counsel enjoys a *strong presumption* that his or her conduct falls within the wide range of reasonable professional conduct. Further, courts are *highly deferential* in scrutinizing counsel's conduct and counsel's decisions on matters of reasonable strategy and make every effort to eliminate the distorting effects of hindsight." (Emphases added.) And it expressly relied on *Strickland* and found Hottman

12

and co-counsel were "competent," "effective," "capabl[e]," and "[Hottman] did a good job for his client."

Those findings are plainly from the ineffective assistance standard—not the applicable lackluster advocacy standard. Even worse, no caselaw supplies an exact meaning of lackluster advocacy, so it is impossible for a reviewing court—like the *Herring* panel—to know how its view might square with the district court's on the same set of facts. The lower court has to rule first to know that. See *State v. Schow*, 287 Kan. 529, 546, 197 P.3d 825 (2008) (remand ordered to apply the correct law to determine whether the defendant "established good cause and then to exercise its discretion to rule on the motion").

This unknown is easily illustrated. As noted by the panel, the dictionary definition of "'lackluster'" means "'lacking energy or vitality; boring, unimaginative, etc.'" *Herring*, 2019 WL 1413030, at *4. Although we emphasize that we do not express any opinion on the merits of Herring's plea withdrawal motion, this record at least shows circumstances that might be fairly characterized as "lackluster" advocacy, such as Hottman not letting Herring review the surveillance recordings until the court ordered him to do so; or not listening to the jail call recording until the first morning of trial despite having received it the week before. A reviewing court may think it understands how a district court should view these circumstances, but it cannot know for sure until the lower court does the analysis. The district court must decide first whether these facts, taken in consideration with the rest of Herring's case, amount to good cause under the lackluster advocacy standard.

Just as importantly, remand is consistent with precedent, i.e., *Garcia*, *Aguilar*, *Schow*, and other Court of Appeals decisions, e.g., *State v. Locke*, 34 Kan. App. 2d 833, 836, 125 P.3d 584 (2006) ("It is not this court's function to review the record to determine

if Locke established 'good cause' to withdraw his plea. This judgment must be first exercised by the district court."); *State v. Black*, No. 118,570, 2018 WL 6713965, at *4 (Kan. App. 2018) (unpublished opinion) (rejecting the State's argument that the district court's error was harmless; remanding the case for the district court to apply the correct legal standard for assessing the competency of counsel in a presentence motion to withdraw plea); *State v. Fritts*, No. 96,975, 2007 WL 2915605, at *2 (Kan. App. 2007) (unpublished opinion) ("Remand for a new hearing is necessary since this court has no evidence before it now that would allow an informed decision regarding the merits of the motion. At that hearing, the trial court should apply the appropriate 'for good cause shown' standard in determining whether Fritts should be allowed to withdraw his plea."); *State v. Krusich*, No. 96,766, 2007 WL 2695833, at *2 (Kan. App. 2007) (unpublished opinion) ("[W]e must remand the case for a rehearing on Krusich's motion to withdraw plea because the discretionary call as to whether good cause has been shown must first be made by the district court."); *State v. Darby*, No. 95,185, 2007 WL 219970, at *5 (Kan. App. 2007) (unpublished opinion) ("Because Darby was subjected to an inappropriate standard, we are required pursuant to *Locke* to remand this case to the district court for reconsideration of Darby's motion under the proper legal standard.").

We reverse the panel's decision and remand the case to the district court with directions to reassess the first *Edgar* factor under the lackluster advocacy standard and then exercise its statutory discretion under K.S.A. 2019 Supp. 22-3210(d)(1).

Reversed and remanded with directions.

BEIER, J., not participating.

14

MICHAEL E. WARD, Senior Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** Senior Judge Ward was appointed to hear case No. 118,648 under the authority vested in the Supreme Court by K.S.A. 20-2616 to fill the vacancy on the court by the retirement of Justice Carol A. Beier.