NOT DESIGNATED FOR PUBLICATION

Nos. 125,196
125,197

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CARIB QUENTAE WALKER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; SETH L. RUNDLE, judge. Submitted without oral argument. Opinion filed November 9, 2023. Affirmed.

*Patrick H. Dunn*, of Kansas Appellate Defender Office, for appellant.

*Boyd K. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before COBLE, P.J., MALONE and WARNER, JJ.

PER CURIAM: Carib Quentae Walker appeals the district court's denial of his presentence motions to withdraw his pleas in two separate cases. Walker argues that the district court erred because his pleas were the product of deficient representation and coercion. Finding no abuse of discretion, we affirm the district court's judgment.

FACTS

In April 2020, the Exploited and Missing Children's Unit of the Wichita Police Department began investigating a runaway minor, A.B., who had been found in the company of Walker. The police informed Walker that A.B. was a minor in the custody of the State and that he should have no further contact with her. By May, A.B. had run away again and a detective soon found sexually explicit advertisements of her on several websites. Police set up a sting operation, contacted the phone number from the advertisements, and ended up finding A.B. with Walker in a Wichita motel room. After he was arrested, the State charged Walker with aggravated human trafficking in case No. 20CR1160. The district court issued a protective order, restraining Walker from contacting A.B. Walker later posted bond and was released from custody.

After running away from State custody again, A.B. called a social worker on July 21, 2020, stating that she wanted to turn herself in—a quick investigation revealed that there were once again sexually explicit advertisements of A.B. on an adult dating site. A.B. told a detective that Walker was physically abusive and had set up the advertisements. Walker—who was still out on bond from the prior case—was once again arrested. Based on these actions, the State filed another case charging Walker with aggravated human trafficking and battery in case No. 20CR1494.

The State moved to consolidate the two cases. At the hearing on the motion, the State explained that it also intended to file an amended complaint, adding 10 counts alleging that Walker had violated the protective order prohibiting contact with A.B. The district court consolidated the cases over Walker's objection.

On May 5, 2021, Walker filed a hand-written motion alleging ineffective assistance of his counsel, Evan Watson. In his motion, Walker broadly alleged that Watson was violating Walker's Sixth Amendment right to counsel by refusing to prepare

a defense on his behalf and was trying to force him to take a plea. The district court held a hearing on Walker's motion the next day. At the hearing, Walker reasserted his claim that Watson was trying to force him to plead guilty. Watson responded that he simply conveyed the plea negotiations to Walker and was not trying to force Walker into pleading guilty. After hearing the parties' arguments, the court denied Walker's motion, noting that Walker had not received ineffective assistance of counsel and that it believed that Watson would continue to competently represent Walker moving forward.

The day after the hearing, the State filed its amended petition adding the 10 violations of a protective order charges. Then, on the Friday before the trial was set to start, the State notified Watson that new information had been uncovered from Walker's cellphone. The State showed the evidence to Watson and expressed that it believed the photos and videos supported new charges of sexual exploitation of a child.

On the morning of trial, the parties informed the district court that they had reached a plea agreement in which Walker would enter an *Alford* guilty plea to two counts of felony sexual exploitation of a child and one count of misdemeanor battery in exchange for dismissing the other charges. See *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). The State asked the district court to set aside its prior order for consolidation and explained that it would amend the charges consistent with the plea deal. The parties agreed to recommend sentences of the high number in the grid box for the sexual exploitation charges and 6 months for the battery charge, with those sentences to be served concurrently, resulting in a total term of 100 months' imprisonment.

As part of the plea colloquy, Walker agreed that he had been given sufficient time to discuss the deal with Watson, that he understood the maximum sentences associated with the charges, that he was entering the plea of his own free will, and that he understood the particulars of the deal. Watson explained to the district court that a similar

3

plea agreement had been in the works for several weeks, the only difference was that the initial agreement had contemplated attempted aggravated human trafficking charges, not sexual exploitation of a minor charges. The prosecutor confirmed that "we did have this general plea proposal pending for several weeks. This is not a rushed deal this morning."

The State then made a proffer of the evidence it would have presented at trial, which consisted mainly of the evidence seized from Walker's cellphone depicting A.B. in the nude and performing sexual acts on Walker, as well as the reports of Walker slapping A.B. The district judge again questioned Walker whether he "had some time to think about whether you want to take this plea agreement," and Walker stated that he had. The court pressed on, asking, "[Y]ou understand that we have the jury sitting in the courtroom, and you have the absolute right to say, I don't want to do this; let's just go have the trial and see how it turns out?" Again, Walker replied, "Yes, sir." The court then accepted Walker's plea to one count of sexual exploitation of a minor in case No. 20CR1160 and one count of sexual exploitation of a minor and one count of battery in case No. 20CR1494.

Eleven days after entering his *Alford* guilty pleas, Walker moved to withdraw his pleas in each case. In the motions, Walker alleged that he had discovered new evidence that A.B. had committed perjury, that Walker was intimidated and coerced into entering his pleas by his attorney, Watson, and that Walker was rushed into a decision on the plea deal. Walker later filed several memoranda in support of his motions to withdraw his pleas—these documents all asserted similar arguments.

At the hearing on the motions, Walker was represented by new counsel. Walker testified and generally reiterated the arguments from his motions. He asserted that he felt that he had been rushed into deciding whether to accept the State's plea offer and that Watson was dishonest and had coerced and intimidated him into doing so. Walker claimed Watson coerced him by telling him, "Take this plea. Its evidence that [the State]

4

got that—some picture or video, I guess. With these charges, . . . you'll never see the daylight." Walker also presented an audio recording of an interview of A.B. performed by his former counsel, Watson, in which A.B. denied that Walker had trafficked her or that he even knew that she was performing sex work. Walker explained that he only received a copy of the interview after he entered his plea and would not have entered the plea if he had known about the contents of the interview.

After Walker testified, the State called Anastasia Leininger, a colleague of Watson's who had been present during the conversation about the plea agreement between Walker and Watson on the morning of the scheduled trial. Leininger testified that Watson never threatened, blackmailed, or intimidated Walker during the meeting. The only rush he placed on Walker was reminding him of the looming start of the trial that morning. Leininger could not remember Walker ever stating that he did not want to take any plea or that he wanted to go to trial. Leininger observed that the evidence supporting the sexual exploitation charges was strong.

Finally, Watson testified about the circumstances of the plea deal, noting the difficulties of negotiating in a situation where "[t]he charges changed on the eve of trial based upon the new evidence of the child pornography that was located on his phone." Although he conceded that "blunt advice from a criminal defense attorney to a client can be perceived as a threat," he denied ever threatening Walker in any way—he merely informed Walker of the unlikelihood of success considering the strength of the State's evidence. Watson claimed that he told Walker, "'You don't have to take this plea. We've got a jury in the next room. We're ready to go. If you want to go to trial, we can go trial. It's your choice." When asked about the interview with the alleged victim, Watson noted that A.B. had given various accounts to the police—both favorable and unfavorable to Walker. And Watson also explained that he and Walker had discussed the particulars of the evidence depicted on the seized cellphone.

5

After hearing the evidence and reviewing the recording of A.B.'s interview, the district court ruled from the bench and denied Walker's motions, finding he had failed to show good cause to withdraw his pleas. While the district court agreed that A.B.'s interview indicated that she was unlikely to cooperate with the State at trial, it noted that her cooperation would have only impacted the human trafficking charges, not the sexual exploitation charges to which Walker pled guilty. The district court stated that it did not agree with Walker's characterization of Watson's advocacy as lacking.

The district court later issued a motion minutes order supplementing its ruling and clarifying three points: (1) Walker waited until A.B.—who had only been made available to testify via a material witness warrant—was released from custody to move to withdraw his pleas, which the court found to suggest bad faith; (2) while A.B.'s interview suggested that her testimony would favor Walker, her prior inconsistent statements to law enforcement would likely have been admissible at trial; and (3) Walker's arguments supporting his motions to withdraw focused on the human trafficking charges, not the sexual exploitation charges to which Walker pled guilty.

At the sentencing hearing on April 14, 2022, the district court followed the plea agreement and sentenced Walker to 100 months' imprisonment on each count of sexual exploitation of a child and a 6-month jail sentence on the battery conviction, all to run concurrent. Walker timely appealed the district court's judgment in each case, and the cases have been consolidated on appeal.

ANALYSIS

Walker argues that the district court abused its discretion in denying his motions because he received lackluster representation, was coerced into entering the pleas by his counsel and the State, and his pleas were not knowingly and voluntarily made. The State

6

counters that Walker's arguments "fail to take into account the reality of the facts," and the district court's decision was not an abuse of discretion.

When a defendant challenges the district court's denial of a presentence motion to withdraw a plea, the defendant must establish on appeal the district court abused its discretion in denying the motion. Judicial discretion is abused if the decision is arbitrary, fanciful, or unreasonable; based on an error of law; or based on an error of fact. *State v. Frazier*, 311 Kan. 378, 381, 461 P.3d 43 (2020). In reviewing such a challenge, this court will not reweigh the evidence or assess witness credibility and must give deference to the district court's findings of fact. *State v. Anderson*, 291 Kan. 849, 855, 249 P.3d 425 (2011). As the party alleging an abuse of discretion, Walker bears the burden to establish the district court abused its discretion in denying his presentence motion to withdraw his plea. See, e.g., *State v. Woodring*, 309 Kan. 379, 380, 435 P.3d 54 (2019).

Before sentencing, a criminal defendant may withdraw a plea for "good cause shown." K.S.A. 2022 Supp. 22-3210(d)(1). When determining whether a defendant has shown good cause, a district court considers at least three factors, known as the *Edgar* factors: (1) was the defendant represented by competent counsel; (2) was the defendant misled, coerced, mistreated, or unfairly taken advantage of; and (3) was the plea fairly and understandingly made? *Frazier*, 311 Kan. at 381 (citing *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 [2006]). Courts cannot "ignore other factors impacting a plea withdrawal that might exist in a particular case." *State v. Schaefer*, 305 Kan. 581, Syl. ¶ 2, 385 P.3d 918 (2016). Relevant here, when a defendant claims their counsel was unconstitutionally ineffective, they may rely on "'lackluster advocacy'" to show good cause under the first *Edgar* factor. *State v. Herring*, 312 Kan. 192, 198, 474 P.3d 285 (2020).

*The first Edgar factor*

Walker first claims that Watson was deficient because he failed to perform a thorough and timely investigation of the evidence recovered from his cellphone and did not give him enough time to consider the State's plea offer. While Walker complains that Watson should have reviewed the videos on his cellphone earlier, the State possessed the cellphone, not Walker. And detectives did not discover the evidence on the cellphone until days before the trial was set to begin. After finding the explicit pictures and videos of A.B. and sharing them with Watson, the State explained that it intended to pursue additional charges for sexual exploitation of a child. Once the State shared the evidence with Watson, he spoke with Walker about the incriminating nature of the pictures and videos. To the extent that Walker now argues that Watson should have inspected the cellphone earlier, Walker himself admitted that he did not recall the photos and videos being on his cellphone. Watson reviewed the evidence when it was made available to him by the State, and he promptly communicated with Walker about its impact and the State's new plea offer. It may have been preferable for Watson to have been able to review the evidence earlier, but his failure to do so does not render his representation lackluster.

Similarly, Walker argues that Watson should have provided him more time to consider whether to accept the State's plea offer. Walker asserts: "Relaying a plea offer at such a late stage in the proceeding has the same effect as never relaying it at all[.]" But as Watson and the State explained at the plea hearing, their negotiations had contemplated a very similar deal for several weeks—the only thing that changed was the specific offenses Walker would plea to. Walker does not assert that he ever asked Watson to request a continuance so he could spend more time considering the plea offer. Further, in direct contradiction to his argument on appeal, before entering his pleas, Walker told the district court that he had been given sufficient time to consider the State's plea offer and declined the court's offer to discuss the matter further with his counsel. The record supports that Watson acted as an effective advocate on Walker's behalf.

8

*The second Edgar factor*

Next, Walker asserts that he was coerced, by both the State and his counsel, and rushed into deciding whether to accept the State's plea offer. As for his counsel's allegedly coercive actions, Walker claims Watson told him to take the plea offer or he would "never see the daylight." Watson addressed the matter at the hearing on Walker's motions to withdraw his pleas, explaining that he believed advice from a criminal defense attorney may sometimes seem threatening, but it is often due to the gravity of the situation. He denied threatening or coercing Walker and believed the plea offer to be the best possible outcome. Leininger confirmed Watson's version of the plea offer. The district court heard this evidence and was entitled to credit Watson's account of events over Walker's.

Walker also argues the State coerced him by threatening to file more charges if he did not accept the plea offer. But the record does not bear out Walker's allegation. The State did not threaten to add charges, it substituted the sexual exploitation charges for aggravated human trafficking charges—this amendment dropped the severity level of the highest offense from level 1 to level 3. The State's decision to amend the charges at such a late hour was based on its discovery of new evidence, not used as an intimidation tactic. And again, a nearly identical plea deal had been on the table for weeks. At the plea hearing, Walker acknowledged that he was entering the pleas of his own free will, had considered his options, and had not been threated or coerced.

*The third Edgar factor*

Third, Walker argues his pleas were not knowingly, voluntarily, and intelligently entered. He claims that his pleas were not voluntary because the evidence was weak and that his pleas were not knowingly made because the plea colloquy was insufficient. It appears Walker's claim that the State's evidence was weak is based on his assertion that

the A.B. is not the woman pictured in the evidence found on his cellphone. Walker first made this claim during the hearing on his motions to withdraw his pleas—he raised no such objection when the State proffered the evidence at the plea hearing. While Walker questions whether the photos and videos recovered from his cellphone depicted A.B., Watson testified that he reviewed the evidence and believed the videos and pictures showed Walker and A.B. engaging in sexual acts. Walker's assertion that the State's evidence to support the sexual exploitation charges was not strong is conclusory and does not support his argument that his pleas were involuntary.

Finally, Walker's contention that his pleas were not knowingly made because the plea colloquy was insufficient is belied by the record. Walker concedes that the district court advised him of the nature of an *Alford* plea and ensured that he understood the rights he was waiving by entering his pleas. Walker does not explain what additional measures the district court should have taken, nor does he provide any authority to support his argument. The record shows that during the district court's plea colloquy, Walker stated that he understood the nature of his pleas, the details of plea agreement, his various rights, and the maximum potential sentences for the charges. The transcript of the plea hearing contradicts Walker's claim that his pleas were not knowingly and voluntarily entered.

Kansas courts have long held that "a defendant should not get relief from a plea decision simply because he or she determines, in hindsight, that it was not the most intelligent course of action." *State v. Schow*, 287 Kan. 529, 542, 197 P.3d 825 (2008). Substantial competent evidence supports the district court's findings under each of the *Edgar* factors and the district court's conclusion that Walker failed to show good cause to withdraw his pleas. Walker has failed to show that the district court abused its discretion in denying Walker's presentence motions to withdraw his pleas.

Affirmed.

10