NOT DESIGNATED FOR PUBLICATION

No. 127,696

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BRANDON JAMAL MILHOUSE,
*Appellant*.


MEMORANDUM OPINION


Appeal from Johnson District Court; CHRISTINA DUNN GYLLENBORG, judge. Submitted without oral argument. Opinion filed May 8, 2026. Affirmed.

*Lindsay Kornegay*, of Kansas Appellate Defender Office, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.


Before WARNER, C.J., ATCHESON and CLINE, JJ.


CLINE, J.: Brandon Jamal Milhouse appeals the district court's denial of his presentence motion to withdraw his plea agreement. After reviewing the record, we find the court did not abuse its discretion when it denied the motion. Milhouse did not show good cause to withdraw his plea based on any of the factors in *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006), or otherwise. K.S.A. 22-3210(d)(1); *State v. Bilbrey*, 317 Kan. 57, 63, 523 P.3d 1078 (2023). We therefore affirm the district court's decision.

FACTUAL AND PROCEDURAL BACKGROUND

Almost a year after he was charged, Milhouse entered a plea agreement in which he agreed to plead guilty to 4 felonies and the State agreed to dismiss 15 other charged crimes. Among other terms, the parties agreed to recommend an 86-month controlling prison sentence. Milhouse also agreed to the destruction of all evidence seized in the case except that a "sports card, cell phone, and cash not subject to forfeiture may be released to a representative of the defendant."

*Milhouse's plea hearing*

At the plea hearing, Milhouse confirmed that he understood the plea agreement and that he knowingly and voluntarily entered it after consulting with his counsel. But after the district court instructed Milhouse on the rights he would give up by entering the plea, the following exchange occurred:

"THE COURT: Do you have any questions about anything we've just covered?
"THE DEFENDANT: Yes.
"THE COURT: Do you need some additional time with Mr. [Zane] Todd [defense counsel]?
"THE DEFENDANT: No. I know he put me in a trick bag. I have to do this. I can't not take this plea. The day before my pretrial—I mean, the day before my motion, he added 15 more felonies on there. Why do I not take a plea when I just got—went from five to 20 in the bag? Or I know that he know that the police was lying on me in a motion to suppress. He literally lied on me. Clearly lied on me, and still I have to go to trial, so I knew I wasn't going to win it, so I have to take this plea. I have to. I'm too old to be playing with my life. I'm almost 40 years old. So I'm stuck in the situation that I have to do this, so I understand it, but, you know okay.
"THE COURT: Based on your comments, Mr. Milhouse, the Court cannot accept your plea.
"THE DEFENDANT: Why not?

"THE COURT: Because you've indicated that we put you in a 'trick bag' and that you feel like you have no other choice but to take the plea which would suggest to this Court that you are not prepared to voluntarily enter into this plea because the Court does not want you to feel forced in any way, Mr. Milhouse.

"THE DEFENDANT: Did you hear what I said before I said that? I came up with this plea. I'm taking this plea because that's what I want, but what I'm saying is I'm stuck because I can't—I'm too old to be trying to 'Oh, if I beat this case, I still got to fight 28 more cases.' Does that make sense to you?

"THE COURT: Well, what I am very sensitive about is your use of the word 'trick bag' and feeling forced to take the plea that would suggest to this Court that you— this isn't a voluntary plea that you're entering but now you've also said that you're the one that came up with this plea and you're wanting to do this plea; is that correct, sir?

"THE DEFENDANT: (inaudible)

"THE COURT: Okay.

"THE DEFENDANT: I wouldn't have signed it if I didn't want to take it.

"THE COURT: Okay."

The State then confirmed that it had offered different plea terms to Milhouse, which he had rejected, and that the agreement that the parties presented to the court was a counteroffer that Milhouse proposed, which was "more favorable" for him. The court confirmed these facts with Milhouse and then asked him if he was entering the plea voluntarily. Milhouse said yes.

The parties and the district court also extensively discussed the return of Milhouse's seized property. According to Milhouse's attorney, Zane Todd, Milhouse had a certified letter from the City of Olathe stating the cash in question would not be forfeited if he filled out a form the city provided. This letter is not included in the record on appeal. Todd said he believed that after sentencing, with a property disposition order from the court, either he or another Milhouse family member would be able to retrieve the money on Milhouse's behalf and put it on Milhouse's books. He said the name of the person who would pick up Milhouse's property would be sorted out between "now and

3

the sentencing date" but if Milhouse had no one who could retrieve his property, then Todd would do it. After the court and the State confirmed that property disposition is ordered at sentencing, the court then asked, "Is that your understanding, Mr. Milhouse?" Milhouse replied "Yes."

The district court ultimately accepted Milhouse's guilty plea.

*Milhouse moves to withdraw his plea.*

Before sentencing, Milhouse filed a pro se motion to withdraw his plea and proceed to a jury trial. In the motion, Milhouse stated: "I agreed to this plea in-part because on 10/18/2023 after me agreeing I was suppose[d] to immediately get my properties back and money in the amount of $1,243.00." Milhouse explained that with the money, he planned to "immediately post bond" so that he could spend time with family, settle affairs, and earn some money. But as of the time he filed his motion, Milhouse was still in jail and had not received any of his property.

Milhouse also stated in his motion that the written plea agreement did not align with what he was told about the return of his property. He was upset that the written agreement did not require his property to be returned to him personally and that it used the word "may," thereby giving the State discretion in whether to return the property. Milhouse contended that "no competent lawyer would ever let their client sign a contract with this language that actually negatively [a]ffects his client financially and rights to his properties."

Milhouse further stated that "[a]fter thinking about" the court's warning that the court would be free to sentence Milhouse contrary to the plea agreement, he would "not . . . willfully subject [him]self to the court being able to change this part of the plea at its

4

d[i]scre[]tion." He also stated that he was misled and coerced into believing the court was required to follow the sentence recommended in the plea agreement.

Recognizing Milhouse's motion to withdraw his plea created a conflict between Milhouse and his attorney, the district court allowed Todd to withdraw and appointed new counsel.

*The court holds an evidentiary hearing and denies the motion.*

At the hearing on his motion, Milhouse testified that Todd had only ever visited him in jail once, two days before the plea hearing. At that meeting, Todd told Milhouse that the State offered a plea deal for 144 months in the custody of the Kansas Department of Corrections (KDOC), and Milhouse firmly denied that offer, because Milhouse "kn[ew] [he] could beat [the State] at trial." Todd told Milhouse they could go to trial, and that Todd had won 5 of his last 10 trials—which Milhouse felt was a poor success rate. Milhouse testified that he had tried to fire Todd on multiple occasions, but the district court denied his requests. He wished to fire Todd because, in his perspective, Todd allowed the State to amend the complaint to add 15 new charges and refused to file a motion for bond modification.

Milhouse next testified that he thought the plea deal was for 36 months' probation with an underlying sentence of 86 months in KDOC custody, based off a conversation he had with Todd. Milhouse then stated, "But I wasn't really worried about that. I was worried about getting my property." Milhouse explained that he believed when he signed the plea agreement that he would have the money returned to him "[t]hat day" as Todd had said he would just have to go down the street to retrieve it. But two weeks after the plea hearing, when Milhouse had not received his money, he asked Todd where the money was and Todd told him he would have to wait until sentencing. Milhouse also testified that he had not actually seen any letter from the city stating that his money

5

would not be forfeited—the letter Todd discussed at the plea hearing—and Milhouse claimed he later received a letter from the City of Olathe stating that the money would, in fact, be forfeited. This letter is not in the record on appeal.

The State cross-examined Milhouse, pointing out that he had a criminal history score of A and had entered into plea agreements in felony cases in the past. It also clarified that Todd did move for Milhouse's bond to be modified during the plea hearing. The State then asked Milhouse if he knew that the State did not inform Todd of its amended complaint, and thus Todd learned of it at the same time as Milhouse; Milhouse replied he believed Todd was already aware of the amended complaint but eventually agreed that he did not know what Todd knew. Milhouse also agreed that he was the one who requested the language regarding the property be included in the plea agreement and that he reviewed the language and accepted the terms.

At the end of the evidentiary hearing, the district court denied the motion, finding:

- Todd's representation was "in the Court's view, . . . very competent" because Todd requested a bond modification; convinced the State to accept Milhouse's 86-month counteroffer when his exposure was up to 288 months' presumptive prison in one case and 237 months in the other; and during hearings throughout the case Todd and Milhouse had "constant communication" and took breaks to discuss issues further.

- Milhouse was not misled, coerced, mistreated, or unfairly taken advantage of. Milhouse "is highly intelligent and articulate, always has very clear recitation and understanding in prior hearings, and, likewise, at the time of the plea, as to how he was proceeding." At breaks in the plea hearing, the court allowed Milhouse to speak in more detail about his thoughts to ensure the court understood his questions. Further, the court found it important that

6

Milhouse had "a level of sophistication" with his prior experiences entering into felony plea agreements in the jurisdiction and that Milhouse proposed the counteroffer that became the plea agreement. The court also found the transcripts of the plea hearing were clear that the court informed and ensured Milhouse understood that the court was not bound by the plea agreement. Lastly, the court found that at no time during the plea hearing was a possibility of probation discussed, and Milhouse clearly stated on the record and in the agreement that he would serve his sentence.

- The plea was fairly and understandably made. Incorporating its prior findings, the court also noted that Milhouse was "not afraid to engage this Court and ask the Court any clarifying questions, having very free-flow, ad-lib discussions" and "was never afraid to add anything or ask additional questions during the course of any of the hearings, including, namely, this plea hearing."

At a later sentencing hearing, the district court ultimately followed the plea agreement—sentencing Milhouse to a controlling departure sentence of 86 months in KDOC custody, citing Milhouse's acceptance of responsibility and the agreement of the parties. The next day, Milhouse appealed the court's denial of his motion to withdraw his plea.

REVIEW OF MILHOUSE'S APPELLATE CHALLENGE

Milhouse contends that the district court erred in denying his presentence motion to withdraw his plea because he showed good cause—arguing that he was not represented by competent counsel, was misled into entering the plea, and the plea was not fairly and understandingly made.

*Standard of Review*

A district court's denial of a presentence motion to withdraw a plea is reviewed by appellate courts for abuse of discretion. *Bilbrey*, 317 Kan. at 63. A district court's decision constitutes an abuse of discretion if it is: (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. The defendant bears the burden of proving the court abused its discretion in denying the motion. 317 Kan. at 63. Where "the district court's exercise of discretion is informed by findings of fact, appellate courts will not reweigh evidence or reassess witness credibility." 317 Kan. at 63.

*Milhouse has not shown good cause to withdraw his plea.*

Before sentencing, a defendant may withdraw their plea for good cause shown. K.S.A. 22-3210(d)(1). When determining whether a defendant has demonstrated good cause, district courts look to three factors described in *Edgar*, 281 Kan. at 36: (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. "These factors should not be applied mechanically and to the exclusion of other factors." *Bilbrey*, 317 Kan. at 62. And courts should not ignore non-*Edgar* factors that might exist under the facts of any specific case. 317 Kan. at 62-63.

*Milhouse's counsel was competent.*

When a defendant moves to withdraw a plea before sentencing, they need only show "a lower standard of lackluster advocacy" to establish good cause shown under this factor—as compared to the constitutional ineffective assistance of counsel standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *Bilbrey*, 317 Kan. at 64-65. Our State's appellate courts have not established an exact test for whether an attorney's advocacy was lackluster, but the dictionary definition

8

provides insight: "'lackluster' means 'lacking energy or vitality; boring, unimaginative, etc.'" 317 Kan. at 65 (quoting *State v. Herring*, 312 Kan. 192, 201, 474 P.3d 285 [2020]).

Milhouse argues that Todd was incompetent for two reasons. First, Todd was generally lackluster because he did not visit Milhouse in jail frequently and "had a relatively non-existent relationship with him." And because of this relationship, Milhouse did not feel confident in Todd's ability to represent him competently at trial. Second, because one of Milhouse's "primary goals in entering the plea was to receive his property" and Todd "incorrectly advised him that his property was not subject to forfeiture and that it would be easy to get the property returned."

The district court applied the lackluster advocacy standard when deciding the issue below. The court then made factual findings directly addressing the first argument, finding: (1) Todd advocated well on Milhouse's behalf by requesting bond modification and convincing the State to accept Milhouse's 86-month counteroffer when he was facing significantly higher prison sentences; and (2) Todd sufficiently communicated with Milhouse throughout the case, and during hearings, Todd and Milhouse "definitely appeared to have a lively relationship," had "constant communication," and actively conferred and discussed with each other, taking breaks to discuss issues further. The district court was in the best position to personally observe Todd and Milhouse's relationship, and an appellate court will not reweigh its factual findings. See *Bilbrey*, 317 Kan. at 63, 65-66.

As for Milhouse's second argument, Milhouse has not shown that Todd provided incorrect advice or lackluster advocacy. The transcript of the plea hearing shows the parties contemplated return of Milhouse's property after sentencing, and the district court even confirmed that was Milhouse's understanding. And Milhouse has not provided the letter he claims he received from the City of Olathe claiming that the property was forfeited. Milhouse has not shown good cause to withdraw his plea based on this factor.

*Milhouse was not misled about the terms of the agreement.*

The second *Edgar* factor considers whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of in the context of a plea. *Bilbrey*, 317 Kan. at 62. Milhouse puts forth two reasons why he was misled regarding the plea agreement. He argues that he believed he was entering a plea for 36 months' probation with an underlying 86-month sentence, and he would not have entered the plea if he knew otherwise. He also argues that Todd advised him that his property would not be subject to forfeiture and it would be easy to get the property—contending this "was misleading advice that was untrue."

The district court made factual findings on Milhouse's belief regarding probation, finding that the possibility of probation was never discussed during the plea hearing, and Milhouse clearly stated on the record and in the agreement that he would serve his prison sentence. As an aside, Milhouse never mentioned any belief that he was supposed to plea to probation in his motion to withdraw his plea, only raising it for the first time during the evidentiary hearing on his motion. And, again, Milhouse has not shown Todd misled him about the return of his property, since the parties discussed that the return of any nonforfeited property would be after sentencing and Milhouse did not provide the letter saying his property will not be returned.

*Milhouse failed to show his plea was not fairly and understandingly made.*

Milhouse argues the plea agreement was not fairly and understandingly made— again resting on his contention that Todd did not properly advise him that his property was subject to forfeiture. The district court incorporated its factual findings under the last two factors, and emphasized that Milhouse was "not afraid to engage this Court and ask the Court any clarifying questions, having very free-flow, ad-lib discussions" and "was never afraid to add anything or ask additional questions during the course of any of the

10

hearings, including, namely, this plea hearing." As discussed, the court read through the terms of the plea agreement at the plea hearing, including the term that stated, "cash not subject to forfeiture may be released to a representative of the defendant." The court reiterated that property would only be turned over to Milhouse if such property was not subject to forfeiture, and Milhouse stated he understood. The court also emphasized multiple times that it was not bound to the terms of the plea agreement, and Milhouse affirmed he understood that as well. And the parties all agreed the property would not be returned, if at all, until after sentencing.

As the State points out, Milhouse convinced the court to accept his plea, stating, "I came up with this plea. I'm taking this plea because that's what I want, but what I'm saying is I'm stuck because I can't—I'm too old to be trying to 'Oh, if I beat this case, I still got to fight 28 more cases,'" and "I wouldn't have signed it if I didn't want to take it." We agree these statements further support the district court's finding that Milhouse fairly and understandingly entered his plea.

Milhouse argues that another case, *State v. Frazier*, 311 Kan. 378, 461 P.3d 43 (2020), supports finding good cause to withdraw his plea agreement. In *Frazier*, the defendant, Reginald Frazier, entered a plea agreement in Kansas which included a term that "'the authorities in Ohio further agree to dismiss and/or not to file any charges resulting out of the search warrant that was obtained as a result of this arrest.'" 311 Kan. at 379. No authorities from Ohio signed Frazier's agreement. Before sentencing, Frazier moved to withdraw his plea, but the district court denied the motion. 311 Kan. at 380. The Supreme Court reversed, finding that there was "a fundamental problem with the plea agreement"; Frazier entered into the agreement relying on a promise that was not made by a party to the agreement. 311 Kan. at 382. The court noted that plea agreements "are akin to civil contracts and, subject to due process concerns, may be analyzed in a similar fashion." 311 Kan. at 382. And a "basic principle of contract law" is that contracts generally bind only the parties that enter into the contract and are not enforceable against

11

a third party that did not negotiate, accept the terms, or receive any consideration for the contract. 311 Kan. at 382. Yet, the court found, "Frazier, contrary to his understanding, signed an agreement containing an important clause that might be binding on no one." 311 Kan. at 383.

The *Frazier* court highlighted that "misinformation provided to a defendant, especially when that misinformation is memorialized in writing, constitutes grounds for withdrawal from the agreement." 311 Kan. at 383. Additional context can be considered, such as whether the incorrect information is reinforced by "'counsel's and the district judge's incorrect statements during the defendant's plea hearing.'" 311 Kan. at 383. The *Frazier* court stated plainly that a "defendant does not understandingly sign a plea agreement when he relies on an uncertain provision that works in his favor and he justifiably believes that provision to be a certainty." 311 Kan. at 384. And the question does not hinge on whether that defendant will actually get the deal represented in the plea agreement, but rather on his implicit belief that the provision was a certainty. See 311 Kan. at 384.

Milhouse argues that much like the circumstances of *Frazier*, he was relying on a promise of conduct that was not made by a party to the agreement—the City of Olathe—and because he relied on statements from his counsel that his money was not subject to forfeiture according to the City, he has demonstrated good cause to withdraw his plea. But Milhouse's situation is not like Frazier's. Frazier's plea agreement was unequivocal and protected a compelling liberty interest by relieving him of further prosecution in another jurisdiction. On the other hand, Milhouse is relying on his alleged assumptions about how the agreement would operate—not express terms in his agreement. And, even then, those assumptions are subject to several uncertainties (such as the timing of the return of his money and the district court's willingness to entertain his release before sentencing) and did not involve a similarly compelling liberty interest. What's more, Milhouse's assumptions directly conflict with the terms of his agreement (since it stated

12

his return of property was contingent on the property not being subject to forfeiture) and the discussion at the plea hearing, where the parties contemplated the property would be returned after sentencing. He has also not shown Todd's advice about the return of his money proved false.

Accordingly, Milhouse has not carried his burden in showing the district court abused its discretion in denying his motion.

Affirmed.