NOT DESIGNATED FOR PUBLICATION

No. 126,972

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

PIERCE ANDRE JACKSON,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; DAVID DAHL, judge. Submitted without oral argument. Opinion filed March 14, 2025. Affirmed.

*David L. Miller*, of The Law Office of David L. Miller, of Wichita, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.


Before HILL, P.J., MALONE and CLINE, JJ.


PER CURIAM: Pierce Andre Jackson challenges (1) the district court's denial of his motion to withdraw his plea and (2) the calculation of his criminal history score in his presentence investigation (PSI) report, based on how his three Texas convictions were scored. He also argues the district court abused its discretion in granting only a 17-month durational departure to his presumptive prison sentence of 216 months.

Given that the record shows the district court correctly found no good cause to withdraw Jackson's plea, his criminal history score was correctly calculated because all of

1

his Texas crimes were classified as person crimes under K.S.A. 21-6811(e)(3)(B), and the court did not abuse its discretion in granting the durational departure that it did, all three of the court's decisions are affirmed.

### FACTUAL AND PROCEDURAL BACKGROUND

Most of the facts underlying Jackson's conviction are not relevant to the issues he raises on appeal. In short, Jackson and three other men arranged to purchase drugs and formulated a plan to rob the drug dealer. Jackson owned the firearm that was used in the robbery, but another man involved in the robbery shot the victim.

The State charged Jackson with first-degree murder during the commission, attempt to commit, or flight from an inherently dangerous felony, and aggravated robbery. The district court appointed Randall Price to represent Jackson.

Jackson eventually pled guilty to one count of aggravated robbery. In return, the State agreed to dismiss the murder charge and a separate case against Jackson. The plea agreement noted the State agreed to recommend a prison sentence, but Jackson was free to argue for a durational or dispositional departure, which the State would oppose. The agreement also stated: "The State anticipates Defendant's criminal history is A or B."

At the plea hearing, Jackson swore he had read and discussed with his attorney the acknowledgment of rights and entry of plea documents and the plea itself. He also swore the answers in those documents were true and correct and that it was his desire to waive his constitutional rights as stated in the documents. Jackson told the court he had discussed the plea, the consequences of changing his plea from not guilty to guilty, and the acknowledgment of rights with Price. Jackson told the court he wished to plead guilty because he was guilty and he was entering his plea agreement on his own volition.

The district court informed Jackson the sentencing range for his crime spanned from 55 to 247 months, included a possible fine up to $300,000, and 36 months' postrelease supervision. It further told Jackson that Special Rule 1 would apply since he pled guilty to a person felony committed with a firearm, which would make his sentence presumptive prison. The court asked Jackson if he understood the effect of Special Rule 1, to which Jackson replied, "Yes." Jackson agreed with the court's recitation of the plea agreement which included the anticipated criminal history score of A or B. He also agreed with the recitation of the factual basis for his plea.

The district court found Jackson guilty and ordered a PSI report. And it reiterated to Jackson that his anticipated criminal history score was A or B.

The PSI report scored Jackson as a criminal history score A based on his convictions for five person felonies: criminal discharge of a firearm and aggravated robbery in Sedgwick County case number 15JV240, and two counts of aggravated robbery and one count of robbery in Texas case number JD82091W. The report also stated the presumed sentencing range for Jackson was 221, 233, or 247 months in prison.

Before sentencing, Price moved to challenge Jackson's criminal history score. The motion argued that the elements of the Texas crimes were broader than the elements of the equivalent Kansas crimes, so they should be scored as nonperson felonies rather than person felonies. The State responded by describing how Jackson's challenged Texas priors were properly scored.

The next week, Price moved for a downward dispositional and/or durational departure. Soon after, he moved to withdraw Jackson's plea because Jackson claimed it "was not made fairly and with understanding of the consequences of the plea." The same day, Price moved to withdraw from representing Jackson, noting "the attorney/client relationship between current court-appointed counsel and Defendant has deteriorated to a

point where appointed counsel can no longer give effective aid in the fair presentation of a defense."

The district court permitted Price to withdraw and another attorney represented Jackson at the hearing on his motion to withdraw his plea. When asked why he wanted to withdraw his plea, Jackson stated:

> "I feel like from the get-go—when the plea was presented to me, I wasn't really interested in taking the plea, but [Price], my previous lawyer, he—he was basically telling me that I had no chance, like this was the only option that I have. . . . I was in a bad situation. Like it was too late. We'd been fighting the case for three years, and I feel like because of me sitting in County [jail] for so long, I was taken advantage of due to the fact—I mean, I was getting antsy. I was tired of sitting, I was tired of sitting, and when he presented this plea, I told him I had no interest in taking a plea. I told him that from the get-go. But he basically told me like this is my only option, this or a life sentence, and that was a scary situation for me.
>
> "When the PSI came back, the PSI came back like two days before court, and he came and seen [*sic*] me on the weekend, and at first he was telling me, 'Oh, it's 94 months to 102 months, you know, if you came back as a C or a D.' And when we got the PSI back, it came back as an A box and I wasn't happy about that. . . . So that's about it, honestly."

Jackson also later explained that he felt like he never talked about strategy with Price and that they "never talked about anything that was working in my favor or anything like that." The State presented several pieces of evidence including Jackson's acknowledgment and waiver of rights as well as the plea agreement. Jackson admitted the plea agreement he signed stated his anticipated criminal history score was A or B and the potential sentencing range was between 55 and 247 months. Price testified that in his 42 years of experience as a criminal defense attorney, this case had as much discovery as any case he had ever handled. He stated that he worked diligently to prepare for trial and filed several motions in anticipation of trial.

4

Price explained that he discussed the likelihood of success at trial with Jackson, he reviewed the plea agreement extensively with Jackson, Jackson unequivocally made the decision on his own to sign the plea agreement, and Jackson knew the plea agreement anticipated a criminal history score of A or B. Price recommended the plea agreement to Jackson and testified that he would "still recommend it today," because to Price, the plea agreement was "[m]ore than fair."

The district court denied Jackson's motion to withdraw his plea. At sentencing, it found Jackson had a criminal history score of A. But it found substantial and compelling reasons to grant Jackson a downward durational departure sentence of 216 months in prison.

Jackson appeals the district court's decisions.

REVIEW OF JACKSON'S APPELLATE CHALLENGES

I. *Did the district court err in denying Jackson's presentence motion to withdraw his plea?*

A. *Standard of review*

Appellate courts review a district court's decision to deny a presentence motion to withdraw a guilty plea for an abuse of discretion. The party seeking to withdraw the plea bears the burden of establishing abuse of discretion. A judicial action constitutes an abuse of discretion if:  (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Bilbrey*, 317 Kan. 57, 63, 523 P.3d 1078 (2023).

B. *Jackson has failed to establish the district court abused its discretion.*

K.S.A. 22-3210(d)(1) provides that a presentence motion to withdraw a guilty plea may be withdrawn "for good cause shown and within the discretion of the court." To determine whether a defendant has shown good cause to withdraw a plea, a district court should consider the three *Edgar* factors: (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006). All three *Edgar* factors "need not apply in a defendant's favor in every case." *State v. Aguilar*, 290 Kan. 506, 513, 231 P.3d 563 (2010). And these factors should not be applied mechanically. *State v. Fritz*, 299 Kan. 153, 154, 321 P.3d 763 (2014).

1. *Price appropriately and competently advised Jackson on his criminal history score and potential sentence.*

Jackson first contends Price delivered incorrect advice to him about his criminal history score and potential sentence. He claims Price told Jackson his criminal history score would be C or D and his sentencing range would be between 94 and 102 months. Not only does Jackson rely on his own testimony to support this statement, but even in that testimony, Jackson said Price told him that his sentence could be "94 months to 102 months, you know, *if you came back* as a C or a D." (Emphasis added.) So even accepting Jackson's testimony at face value, it still does not establish that Price told him he *would* come back as a C or D. Thus all Jackson's testimony establishes is that Price provided accurate advice about a hypothetical.

The State points to a plethora of evidence in the record showing that Price advised Jackson of his potential criminal history score and Jackson was fully aware his criminal history score could be A or B. For example, Price testified he went over the plea agreement carefully with Jackson, which stated his criminal history score was anticipated

6

to be A or B. And at the plea hearing, the district court had the State read the plea agreement, including this provision, out loud. Jackson also told the court at the plea hearing that he knew his plea agreement said he would be a score of A or B and he knew the prosecutive sentence was for a severity level 3 offense with a criminal history level A.

Jackson attempts to discount these acknowledgments by claiming that if he "reasonably believed, based on Price's misadvice, that he would be in 'C' or 'D' box, there would be little 'enlightenment' from the district court's recitation of the maximum sentence in the 'A' box at the plea hearing." But, again, Jackson provides no record support for his claim that Price told him his criminal history score would be a C or D, nor any explanation for why he would have reasonably believed that to be true considering his written and oral acknowledgments of his criminal history score of A or B in and relating to his plea agreement.

Jackson next argues that when the PSI report came back with a score of A, Price unrealistically told Jackson that he could secure a downward departure to a sentence reflective of a C or D score. Jackson contends "there is no possible way" Jackson could be C or D because Jackson's Kansas felony adjudications make him a category B. Again, he provides no corroborating evidence that Price made this promise. Instead, he seems to capitalize on a vague response Price made at the hearing on Jackson's motion to withdraw his plea. When Price was asked about his strategy to deal with Jackson's criminal history, he said he filed a motion to challenge that history. Price testified that if his challenge of Jackson's criminal history score was successful, "that would've knocked out two person felonies, so D. I don't know. I'd have to look at the grid." He also said there were no guarantees this motion would be successful.

Price's tentative estimate at the hearing provides an insufficient basis to establish Jackson's claim that Price unrealistically promised he could reduce his criminal history score to a C or a D, particularly given Price's additional testimony that he made no

guarantees about the success of his motion. And even so, we fail to see how this alleged promise impacted Jackson's plea because the PSI report was issued after he pled guilty.

Jackson finally contends Price delivered a "lackluster performance," pointing out that Jackson had filed a motion to discharge Price early in the case and Price eventually moved to withdraw from representing Jackson. But again, Price's motion to withdraw was filed after Jackson pled. And Jackson withdrew his motion to discharge Price weeks before the preliminary hearing and over two years before he entered his plea. We fail to see how these motions evidence that Price delivered a lackluster performance in relation to Jackson's plea.

Price negotiated to secure a plea agreement that dropped the charge for felony murder, which carries a significant sentencing range. K.S.A. 21-6804(a); K.S.A. 21-6620(b). Jackson also agreed in his acknowledgment of rights and entry of plea that his lawyer had "done a good job counseling and assisting me, and I am satisfied with the advice and help my lawyer has given me." Price testified he reviewed around 35,000 pages of discovery, participated in and conducted a long preliminary hearing, and filed around a dozen pretrial motions. All these actions demonstrate Price provided competent and diligent representation.

While Jackson's and Price's testimonies conflict, or at the very least Price's testimony contradicts Jackson's characterization of Price's advice and representation, the district court gave more weight to Price's testimony. It found Price's representation was not below the standard of reasonableness; Price did not commit any errors; he was effective in representing Jackson; and his representation was not lackluster. This court defers to the district court's assessment of witness credibility. *Cresto v. Cresto*, 302 Kan. 820, 839, 844, 358 P.3d 831 (2015). Generally, this is true because, "an appellate court will give deference to a district court's ability to personally observe the proceedings below and will not overturn a trial court's weighing of the evidence or assessment of the

witnesses' credibility based upon a cold record." *State v. Schaefer*, 305 Kan. 581, Syl. ¶ 7, 385 P.3d 918 (2016). The district court placed more weight on Price's testimony, and we must accept its evaluation of the credibility of the witnesses who testified before it.

We therefore find no grounds for withdrawal of Jackon's plea based on erroneous advice of counsel.

2. *The district court applied the correct legal standard.*

Jackson also argues the district court relied on the wrong standard to evaluate Price's representation. He asserts the court used the *Strickland* standard which holds that a convicted defendant must show both that his or her legal representation "fell below an objective standard of reasonableness" guaranteed by the right to counsel under the Sixth Amendment to the United States Constitution and that absent the substandard lawyering there is "a reasonable probability" the outcome in the criminal case would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). He accurately concludes that while good cause to withdraw a plea may occur if a defendant is represented by incompetent counsel, the three-factor *Edgar* test should not be read to "transform the lower good cause standard of the statute's plain language into a constitutional gauntlet." *Aguilar*, 290 Kan. at 513; see *Edgar*, 281 Kan. at 36. Jackson argues a more stringent constitutional standard for competent counsel—for instance, the *Strickland* standard—is not necessary under *Edgar*. Rather, "[m]erely lackluster advocacy . . . may be plenty to support the first *Edgar* factor and thus statutory good cause for presentence withdraw of a plea." *Aguilar*, 290 Kan. at 513.

Jackson believes the district court applied the wrong standard because at the end of its order denying his motion to withdraw his plea, the court inserted some language and law that appears to be more aligned with the *Strickland* standard. In the court's 26-page opinion, it did state Price was "effective" twice. Jackson offers no other record

9

citation to support his assertion that the court applied the wrong standard. But as the State points out, the court relied on the lackluster advocacy standard and at no point did the court even suggest it was applying the *Strickland* standard.

In reviewing and applying the lackluster advocacy standard, the district court stated, at various points in the order:

"18.   The *Edgar* factors do not transform the lower good cause standard of the Statute's plain language into a constitutional gauntlet. Merely lackluster advocacy . . . may be plenty to support the first *Edgar* factor and thus statutory good cause for presentence withdrawal of a Plea. . . .

"19.   "Our Kansas Supreme Court endeavored to define 'lackluster' in *State v. Herring*, 312 Kan. 192, 197, 474 P.3d 285 (2020) . . . .

"20.   When the same motion (to withdraw a Plea) is made before sentencing, a lower standard of lackluster advocacy may constitute good cause to support the presentence withdrawal of a Plea. *Bilbrey*, 523 P.3d at 1084.

"21.   Although 'no caselaw supplies an exact meaning of lackluster advocacy,' the dictionary definition of 'lackluster' means 'lacking energy or vitality; boring, unimaginative, etc.' *Bilbrey*, 293 P.3d at 1084.

"22.   Our caselaw does not require the Court to expressly use the words 'lackluster advocacy' on the record in ruling on a motion to withdraw Plea under the first *Edgar* factor. When, as here, a defendant files a presentence motion to withdraw a Plea based on ineffective assistance of counsel, the Court need only evaluate whether counsel's representation was competent. *Bilbrey*, 293 P.3d at 1085.

"23.   The *Strickland* factors do not apply to presentence motions to withdraw a Plea. . . . .

"116. Throughout the entirety of this case, Mr. Price was not, in any way, lackluster. . . ."

Not only was the district court exceptionally clear that it was evaluating and applying the lackluster advocacy standard, but the court further explicitly professed *Strickland* as inapplicable. The fact the district court concluded twice that Price was

10

"effective" does not mean the court applied *Strickland* or concluded Price was effective under *Strickland*. Jackson misconstrues the record.

For these reasons, we find the district court did not abuse its discretion in denying Jackson's motion to withdraw his plea.

### 3. *Jackson has not preserved his challenge to the factual basis of his plea.*

Jackson next argues his plea was not entered "in a knowing and understanding manner" because he claims the factual basis for his plea was insufficient. He claims the factual basis provided at the plea hearing did not support the crime of aggravated robbery on an aiding and abetting theory and Price did not provide him competent legal advice on this theory of the crime.

The State contends we lack jurisdiction to consider this issue because Jackson did not assert this reason as a basis to withdraw his plea before the district court. And even if jurisdiction exists, the State argues we should still not decide the merits because Jackson's claim is unpreserved for review.

Whether we possess jurisdiction is a question of law that permits unlimited review. *State v. Hillard*, 315 Kan. 732, 775, 511 P.3d 883 (2022). And the State correctly contends that subject matter jurisdiction may be raised at any time, including for the first time on appeal. *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019).

Before assessing the State's jurisdictional and preservation arguments, we first consider why the State believes Jackson is asserting a new basis to withdraw his plea for the first time on appeal. In Jackson's motion to withdraw his plea, he simply argued his plea "was not made fairly and with understanding of the consequences of the plea."

11

Jackson argues this "broad assertion would encompass an argument that there was an insufficient factual basis for the plea."

But whether a "broad assertion" would theoretically include an argument is not the same as whether Jackson presented the argument to the district court, which is the question before us. Litigants are expected "to fully present their cases to the trial court" to satisfy the preservation rule. *In re Adoption of Baby Girl G.*, 311 Kan. 798, 803, 466 P.3d 1207 (2020); see, e.g., *State v. Scheetz*, 318 Kan. 48, 59, 541 P.3d 79 (2024) ("[A] party cannot object to evidence on one ground at trial and then substitute another ground on appeal or assert a general ground at trial and then specify more particular grounds on appeal."). It is not the district court's job to ferret out all the possible reasons why Jackson's plea could not have been fairly and understandingly made—it was Jackson's job to set forth those reasons before the district court. And when asked at the hearing why he wanted to withdraw his plea, Jackson was concerned with his criminal history score and Price's alleged focus on the State's evidence against Jackson without mentioning evidence that worked in Jackson's favor. He never mentioned an insufficient factual basis for his plea or that Price provided him incompetent legal advice about that basis.

On appeal, Jackson claims he "had questions about aiding and abetting based upon the prosecutor's recitation at the plea hearing." He says he asked Price on two occasions at the plea hearing about this issue, which shows that Jackson did not understand Kansas law on aiding and abetting. To support this claim, Jackson points to the answer he provided at the hearing on his motion to withdraw his plea when he was asked why he told the court at the plea hearing that he was not forced or coerced into taking a plea. Jackson responded as follows:

> "[W]ell, obviously it had a lot to do with him telling me I had no chance. Like I had no chance at trial. He wasn't confident at all, you know, and he was my lawyer for three years so—and us talking, him coming up here and talking to me, it was more so of

12

him persuading me, like he's persuading me to enter the plea, and I—the day that I was asked some of those questions, I was asked a question that I was kind of stumbled upon and I leaned over and asked him, you know, like what do I say? And he basically told me like the [prosecutor] had stated something about Kansas statute of aiding and abetting or whatever, but—and it just from that point—from that day forward, from that moment, it just wasn't—it didn't sit right with me because it wasn't—it wasn't right. It wasn't what the facts, it wasn't the truth. I know we're not going to get into that, but at the end of the day like it was just from that moment forward."

The State correctly contends this testimony has nothing to do with the adequacy of the factual basis for Jackson's plea. Instead, it focuses on the accuracy of the factual recitation—not its sufficiency to support the crime to which he pled guilty. And after mentioning this concern, Jackson then says, "I know we're not going to get into that." We fail to see how this testimony shows Jackson raised the argument at the motion to withdraw his plea hearing (or in his written motion) that there was an insufficient factual basis for the aiding and abetting theory.

When the district court asked Jackson why he wanted to withdraw his plea, Jackson did not respond with any concerns about the factual sufficiency for the plea. We therefore agree with the State that this is a new argument Jackson is raising on appeal. That said, we do not find the State's argument that this means we have no jurisdiction over this issue to be persuasive. A review of the cases that the State relies on for this proposition reveal Jackson's failure to present this argument below simply means he failed to preserve it for appeal, not that we have no jurisdiction to hear it. For example, in *State v. Lara-Baca*, No. 123,261, 2021 WL 5408667, at *4 (Kan. App. 2021) (unpublished opinion), the State correctly notes that our court commented that Lara-Baca's raising of completely new issues on appeal as to why his motion to withdraw his plea should have been granted was "the functional equivalent of never having filed a motion before the district court." But we did not say that meant we had no jurisdiction to hear the new claims. Instead, we found them unpreserved. 2021 WL 5408667, at *4. And

13

similarly, in *State v. Solomon*, 257 Kan. 212, 891 P.2d 407 (1995), while the State correctly notes our Supreme Court refused to consider new arguments on appeal as to why Solomon should have been allowed to withdraw his plea, it never said its refusal was based on jurisdictional concerns. 257 Kan. at 222.

That said, Jackson's failure to assert his argument below is still problematic even if it does not impact our jurisdiction. Because Jackson did not present his aiding and abetting argument to the district court as a reason to withdraw his plea, we find it unpreserved for determination on appeal.

Jackson did not address his failure to preserve these arguments in his opening brief. After the State raised the issue, he argued in his reply brief that we should exercise our discretionary authority to consider this unpreserved issue because he claims it falls within one of our recognized exceptions to the preservation rule. He claims we should still decide the issue because it is "'necessary to serve the ends of justice or to prevent the denial of fundamental rights.'" *State v Perkins*, 310 Kan. 764, 768, 449 P.3d 756 (2019). He states that because the factual basis that was provided at his plea hearing was insufficient to establish his guilt for the crime to which he pled, his due process rights were violated. And he claims this renders his plea unconstitutional, so allowing it to stand would "defeat the ends of [] justice." See *Boykin v. Alabama*, 395 U.S. 238, 242-44, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969).

We decline to consider Jackson's argument on appeal under these exceptions. For one, Jackson does not explain how Price provided him incompetent advice regarding the legal requirements for a valid plea under an aiding and abetting theory. He also does not establish that the factual basis for his plea was insufficient. Jackson claims the State did not assert that he had the specific intent to commit each element of aggravated robbery, the crime to which he pled guilty. But when discussing the charge, the State said that the victim "had his property taken by Mr. Jackson and another individual by the name of

14

Orlando Howard. Howard was armed with the handgun, but under aiding and abetting here in Kansas, Mr. Jackson would be liable for the use of that firearm by his coconspirator." Jackson agreed with this factual basis, that he, along with Howard, took the victim's property while Howard possessed a firearm. This recitation described both Jackson and Howard taking the victim's property while Howard was armed, which would support Jackson's intent to rob the victim. And after the State recited the facts, the court asked Jackson, "That's what actually happened; is that correct?" To which Jackson replied, "Yes, sir."

For these reasons, we decline to address Jackson's argument that the factual basis for his plea was insufficient as grounds to justify withdrawal of his plea.

II. *Did the district court err in denying Jackson's objection to his criminal history score?*

A. *Standard of review*

Whether a prior conviction or adjudication was properly classified as a person or nonperson crime for criminal history purposes raises a question of law subject to unlimited review. *State v. Dickey*, 301 Kan. 1018, 1034, 350 P.3d 1054 (2015).

B. *Jackson's criminal history was properly scored.*

Jackson's PSI report showed five entries on his criminal history. It showed he was convicted in June 2015 of criminal discharge of a firearm and aggravated robbery in Sedgwick County. And the report stated Jackson had two aggravated robbery convictions under Tex. Penal Code Ann. § 29.03, and one robbery conviction under Tex. Penal Code Ann. § 29.02, all in March 2016. All five entries were identified as juvenile person felonies.

15

Jackson moved to challenge his criminal history score by claiming:

> "The Texas crimes of Aggravated Robbery and Robbery contain elements that are broader than the elements of the Kansas crimes of Aggravated Robbery and Robbery and therefore the out-of-state convictions for Aggravated Robbery and Robbery are not comparable to an offense under the Kansas Criminal Code and Defendant's convictions shall be classified as nonperson crimes."

At sentencing, Jackson continued to object to his criminal history score based on this motion and stated his motion was premised on *State v. Wetrich*, 307 Kan. 552, 412 P.3d 984 (2018).

*Wetrich*, decided by the Kansas Supreme Court on March 9, 2018, held that an out-of-state offense is comparable to a Kansas crime if the elements of the out-of-state crime are "identical to, or narrower than, the elements of the Kansas crime to which it is being referenced." 307 Kan. at 562. The State correctly argues, however, that *Wetrich* was superseded by K.S.A. 21-6811(e)(3). In *State v. Baker*, 58 Kan. App. 2d 735, Syl. ¶ 3, 475 P.3d 24 (2020), this court succinctly explained the supplantation:

> "The Kansas Legislature amended K.S.A. 21-6811(e)(3), adding subsection B, and providing a new framework for deciding whether prior out-of-state crimes should be classified as person or nonperson offenses in calculating criminal history when a defendant is sentenced on or after May 23, 2019, the date the amended statute became effective. This framework, which requires a sentencing judge to compare the enumerated circumstances listed in K.S.A. 2019 Supp. 21-6811(e)(3)(B)(i) or (ii) to the elements of the prior out-of-state conviction, legislatively overrules the comparable offense analysis previously required by the rule in *State v. Wetrich*, 307 Kan. 552, 412 P.3d 984 (2018)."

Jackson committed the aggravated robbery at issue in August 2019. So *Wetrich* and its legal framework is inapplicable. In his reply brief, Jackson recognizes that his offense was committed after K.S.A. 2019 Supp. 21-6811 was amended and that *Baker*

concluded *Wetrich* was legislatively overruled by this amendment. But he nevertheless maintains *Baker* was wrongly decided and argues that we must still rely on *Wetrich*'s legal framework. We disagree. Not only does Jackson fail to explain why he believes *Baker* was incorrectly decided, but he fails to apply *Baker* and K.S.A. 21-6811(e)(3)(B) to his case.

The State persuasively argues that Jackson's Texas adjudications were scored properly. First, Jackson does not claim his Texas convictions were improperly scored as felonies—he simply claims they should have been scored as nonperson instead of person felonies.

We assess whether Jackson's Texas felonies are classified as person or nonperson under K.S.A. 21-6811(e)(3). That statute states:

> "(3) The state of Kansas shall classify the crime as person or nonperson.
>
> (A) In designating a misdemeanor as person or nonperson, comparable offenses under the Kansas criminal code in effect on the date the current crime of conviction was committed shall be referred to. If the state of Kansas does not have a comparable person offense in effect on the date the current crime of conviction was committed, the out-of-state crime shall be classified as a nonperson crime.
>
> (B) In designating a felony crime as person or nonperson, the felony crime shall be classified as follows:
>
> (i) An out-of-state conviction or adjudication for the commission of a felony offense, or an attempt, conspiracy or criminal solicitation to commit a felony offense, shall be classified as a person felony if one or more of the following circumstances is present as defined by the convicting jurisdiction in the elements of the out-of-state offense:
>
> (a) Death or killing of any human being;
>
> (b) threatening or causing fear of bodily or physical harm or violence, causing terror, physically intimidating or harassing any person;

17

(c) bodily harm or injury, physical neglect or abuse, restraint, confinement or touching of any person, without regard to degree;

(d) the presence of a person, other than the defendant, a charged accomplice or another person with whom the defendant is engaged in the sale, distribution or transfer of a controlled substance or non-controlled substance;

(e) possessing, viewing, depicting, distributing, recording or transmitting an image of any person;

(f) lewd fondling or touching, sexual intercourse or sodomy with or by any person or an unlawful sexual act involving a child under the age of consent;

(g) being armed with, using, displaying or brandishing a firearm or other weapon, excluding crimes of mere unlawful possession; or

(h) entering or remaining within any residence, dwelling or habitation."
K.S.A. 21-6811(e).

Since Jackson was convicted of robbery and aggravated robbery, we look at the Texas robbery statute in effect on the date of Jackson's crimes, Tex. Penal Code Ann. § 29.02, which provides:

"(a) A person commits an offense if, in the course of committing theft as defined in Chapter 31 and with intent to obtain or maintain control of the property, he:

(1) intentionally, knowingly, or recklessly causes bodily injury to another; or

(2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.

"(b) An offense under this section is a felony of the second degree."

We also look at Texas' aggravated robbery statute then in effect, Tex. Penal Code Ann. § 29.03, which provides:

"(a) A person commits an offense if he commits robbery as defined in Section 29.02, and he:

(1) causes serious bodily injury to another;

(2) uses or exhibits a deadly weapon; or

18

(3) causes bodily injury to another person or threatens or places another person in fear of imminent bodily injury or death, if the other person is:
    (A) 65 years of age or older; or
    (B) a disabled person."

Jackson's PSI report does not state what subsection he was convicted under for his aggravated robberies or robbery. However, under any of the potential subsections we reach the same conclusion: Jackson's three Texas convictions are person felonies.

If Jackson's Texas robbery adjudication arose under Tex. Penal Code Ann. § 29.02(a)(1), it scores as a person felony under K.S.A. 21-6811(e)(3)(B)(i)(c) because this subsection of the Texas robbery statute requires bodily harm or injury to a person. And if his Texas robbery adjudication arose under Tex. Penal Code Ann. § 29.02(a)(2), it also scores as a person felony under K.S.A. 21-6811(e)(3)(B)(i)(b) because this subsection of the Texas robbery statute requires causing fear of bodily or physical harm. If Jackson's Texas aggravated robbery adjudications arose under Tex. Penal Code Ann. § 29.03(a)(1) or (3), they would score as person felonies for the same reasons that his robberies would, because they would have required either bodily injury or fear of bodily injury. K.S.A. 21-6811(e)(3)(B)(i)(b) and (c). Finally, if Jackson's Texas aggravated robbery adjudications arose under Tex. Penal Code Ann. § 29.03(a)(2), then they would also be person felonies under K.S.A. 21-6811(e)(3)(B)(i)(g) because they necessarily required being armed with, using, displaying, or brandishing a firearm or other weapon.

Jackson asserts three issues with classifying his three adjudications as person felonies under K.S.A. 21-6811(e)(3)(B). First, he argues it is "unclear whether the convictions score as person felonies under subsection (a)(1) because there is a difference between causing 'serious bodily injury' and 'bodily harm or injury' requirement under (B)(i)(c)." He cites *Baker*, 58 Kan. App. 2d 743, to support this argument. In that case, the defendant "previously was convicted in Missouri for felony resisting arrest 'by fleeing

[and] creating a substantial risk of serious injury/death to any person' in violation of Mo. Rev. Stat. § 575.150 (2009)." 58 Kan. App. 2d at 743. It determined the district court erred in finding Mo. Rev. Stat. § 575.150 (2009) was a person felony under K.S.A. 21-6811(e)(3)(B)(i)(b) because there is a difference between creating a "substantial risk of serious injury/death to any person" versus threatening or causing fear of bodily or physical harm or violence or causing terror. 58 Kan. App. 2d at 743. It reached this conclusion because it found there "is competing mens rea underlying these two scenarios: creation of a substantial risk of serious injury or death can encompass reckless behavior, while threatening or causing fear in another person of bodily or physical harm or violence likely does not." 58 Kan. App. 2d at 744. It found that "the latter appears to be more intentional on its face, requiring a higher culpability level." 58 Kan. App. 2d at 744.

The opposite is true here. K.S.A. 21-6811(e)(3)(B)(i)(c) requires only "bodily harm or injury, physical neglect or abuse, restraint, confinement or touching of any person, without regard to degree," whereas Tex. Penal Code Ann. § 29.03(a)(1) heightens the standard to "*serious* bodily injury to another." A crime causing bodily harm or injury is a person crime under K.S.A. 21-6811(e)(3)(B)(i)(c) and a crime causing *serious* bodily injury would *certainly* be a person crime under the same statute.

Jackson secondly argues "there is a difference between placing another person 'in fear of imminent bodily injury or death' and 'threatening or causing fear of bodily or physical harm or violence . . . to any person' as required by [subsection] (B)(i)(b)." While Tex. Penal Code Ann. § 29.03(a)(3) classifies an aggravated robbery as someone who "causes bodily injury to another person or threatens or places another person in fear of *imminent* bodily injury or death," K.S.A. 21-6811(e)(3)(B)(i)(b) does not temporally restrict the action of threatening or causing fear of bodily or physical harm or violence or causing terror. (Emphasis added.) Under Tex. Penal Code Ann. § 29.03(a)(3), imminence of fear must be shown. K.S.A. 21-6811(e)(3)(B)(i)(b) does not have the same requirement. In other words, K.S.A. 21-6811(e)(3)(B)(i)(b) is broader and encompasses

20

more instances under this subsection that qualify as a person felony than Tex. Penal Code Ann. § 29.03(a)(3). Jackson's argument here is unconvincing.

And Jackson thirdly argues "there is a difference between using or exhibiting a 'deadly weapon' and [the] 'using, displaying or brandishing a firearm or other weapon' requirement of (B)(i)(g)." Although Tex. Penal Code Ann. § 29.03(a)(2) provides that aggravated robbery occurs when a person commits robbery and "uses or exhibits a *deadly* weapon*," K.S.A. 21-6811(e)(3)(B)(i)(g) states a crime is a person felony if the defendant is "armed with, using, displaying or brandishing a firearm or other weapon, excluding crimes of mere unlawful possession." (Emphasis added.) Once again, Jackson believes there is a difference because the Texas statute requires an additional element: that the weapon is deadly. But K.S.A. 21-6811(e)(3)(B)(i)(g) is broader and encompasses all crimes that meet its definition—regardless of whether that firearm or other weapon is deadly or not. Tex. Penal Code Ann. § 29.03(a)(2)'s more specific requirements are subsumed by K.S.A. 21-6811(e)(3)(B)(i)(g)'s broader requirements.

Every form of robbery under Tex. Penal Code Ann. § 29.02 and aggravated robbery under Tex. Penal Code Ann. § 29.03 should be classified as a person felony under K.S.A. 21-6811(e)(3)(B) because they either require "threatening or causing fear of bodily or physical harm or violence, causing terror, physically intimidating or harassing any person," "bodily harm or injury, physical neglect or abuse, restraint, confinement or touching of any person, without regard to degree," or "being armed with, using, displaying or brandishing a firearm or other weapon, excluding crimes of mere unlawful possession." K.S.A. 21-6811(e)(3)(B)(b), (c), (g). The State puts it in simpler terms: "[T]here is no way for defendant's Texas adjudications for robbery and aggravated robbery to have *not* been scored as person felonies under the applicable statutory test."

Jackson raises one final issue in his reply brief. He points out that both parties below argued the application of *Wetrich* and the district court applied the *Wetrich*

21

standard to make its decision. He is right. But "[i]f a trial court reaches the right result, its decision will be upheld even though it relied upon the wrong ground or assigned erroneous reasons for its decision." *Gannon v. State*, 302 Kan. 739, Syl. ¶ 4, 357 P.3d 873 (2015). Although Jackson, the State, and the district court all wrongly relied on *Wetrich* below, the court's decision to deny Jackson's motion must still be upheld because it is the right result.

For these reasons, we find the district court properly scored Jackson's three Texas crimes listed in his PSI report as person crimes.

III. *Did the district court err in granting Jackson only a 17-month durational departure?*

Jackson finally contends the district court abused its discretion when it did not grant a larger durational departure to his prison sentence. His presumptive sentencing range was 221, 233, or 247 months in prison. The district court granted a departure and sentenced Jackson to 216 months in prison and 36 months of postrelease supervision.

A. *Standard of review*

"When an appellate court is considering whether a sentencing court erred in granting or denying departure based on a nonstatutory mitigating factor, the reviewing court applies an abuse of discretion standard." *State v. Morley*, 312 Kan. 702, Syl. ¶ 1, 479 P.3d 928 (2021).

A "trial court abuses its discretion if no reasonable person could agree with the trial court. If any reasonable person could agree, the appellate court will not disturb the trial court's decision. [Citations omitted.]" *State v. Favela*, 259 Kan. 215, 244, 911 P.2d 792 (1996).

B. *The district court did not abuse its discretion in its departure decision*

At the sentencing hearing, the district court methodically explained the different considerations a court looks at when determining a defendant's sentence. Here, it looked at Jackson's plea agreement, including the State's recommendations and charges that were dismissed or reduced, along with the sentencing guidelines and the applicable special sentencing rule, Jackson's criminal history, statements from the victim's and Jackson's family, and Jackson's departure motion. Jackson asserts some of these considerations are irrelevant to the extent of his durational departure and the court should have considered Jackson's sentence and Jackson's "relative culpability vis-a-vis his co-defendants, and the *sentences* received by his co-defendants." (Emphasis added.)

First, Jackson misunderstands the district court's explanation of several of the factors the court considered. For example, Jackson says the State's sentencing recommendation, the potential sentence Jackson could have received on a charge dismissed under the plea agreement, and the sentencing range in the guidelines are all only relevant to whether to grant a dispositional departure, not the extent of a durational departure. But the court mentioned these items to provide context for its decision, explaining the starting point for its decision on Jackson's sentence. Jackson does not explain why a court should not consider this starting point and the factors that lead to that starting point when determining both whether and how much to depart. He also fails to see the significance the court placed on the State's recommendation—that it was recommending a mid-level and not a lower grid sentence—and that Jackson had already potentially received a benefit in the dismissal of a serious charge that, if convicted, could have given him a sentence of 50 years. We disagree these factors are irrelevant to deciding the appropriate extent of a durational departure.

Jackson does not address the district court's reliance on his own criminal history and statements from the victim's and Jackson's families as reasons for its sentencing

23

decision. Instead, he spends most of this section of his brief outlining why he feels his sentence was disproportionate to the sentences of his codefendants. But his argument is based solely on his belief that his culpability is less than those codefendants and he fails to address any of the reasons the district court provided as to why Jackson's sentence was different. The district court mentioned at Jackson's sentencing hearing that the codefendants' lighter sentences had already been raised and discussed—as had the reasons why those sentences were lighter. And the court reminded the parties that Jackson's codefendants' sentences were lighter due to their different criminal histories, plea agreements, and their testimony against their codefendants. In reciting the sentences of his codefendants, Jackson mentions some had lesser criminal histories—such as H or I compared to Jackson's A—and that some received departure sentences based on their age and the substantial assistance they provided in the case. Yet he fails to acknowledge the relevance of these factors to the sentencing disparity.

As for his last argument, Jackson says the district court erred because it based his sentence on an improper criminal history, based on his argument that his history should not have been A since he alleges his Texas convictions were improperly scored. But as explained above, those convictions and his history were properly scored. So we find this argument unavailing.

In short, Jackson has failed to persuade us that the district court abused its discretion in the extent of his sentencing departure.

Affirmed.